Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| SONNELL FLEET SOLUTIONS II, LLC<br><br>Recurrente<br><br>v.<br><br>JUNTA DE SUBASTAS DEL MUNICIPIO DE PATILLAS<br><br>Recurrido | KLRA202400224 | *Revisión de Decisión Administrativa* procedente de la Junta de Subastas del Municipio de Patillas<br><br>Subasta Núm.: SM2023-005<br><br>Sobre: Impugnación de Subasta |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Barresi Ramos y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 28 de junio de 2024.

Comparece Sonnell Fleet Solutions II, LLC. (Sonnell o parte recurrente), mediante *Revisión Administrativa* presentada el 2 de mayo de 2024 y nos solicita la revisión de la adjudicación de subasta emitida y notificada por correo certificado el 23 de abril de 2024 por la Junta de Subastas del Municipio de Patillas (Junta de Subastas o parte recurrida). Mediante esta determinación, la Junta de Subastas adjudicó la Subasta SM 2023-005 a favor de JE Sales & Services, Inc. (JE Sales).

Por los fundamentos que exponemos a continuación, **revocamos** la adjudicación de la subasta impugnada.

### I.

Según surge del expediente ante nuestra consideración, el 15 de febrero de 2024, la Junta de Subastas emitió un *Aviso Público*[1], mediante el cual solicitó propuestas selladas para la contratación de servicios de mantenimiento y reparación a la flota vehicular

---

[1] Apéndice del Recurso de Revisión Administrativa, pág. 1.

Número Identificador

SEN2024 _____

adquirida con fondos de la Administración Federal de Transporte (FTA, por sus siglas en inglés) del Municipio de Patillas. El aludido *Aviso Público* disponía que todo licitador interesado debería obtener los pliegos de condiciones y especificaciones antes de la reunión pre-subasta, en la Oficina de Secretaría Municipal, así como mediante solicitud vía correo electrónico a la siguiente dirección: subastamunicipiopatillas@gmail.com. Los proponentes debían entregar sus propuestas en una (1) original y una (1) copia digital en formato PDF en sobres sellados, en la Oficina de Secretaría Municipal, cuya fecha límite era el 5 de marzo de 2024, a las 12:00m.

Luego de solicitar los pliegos de subasta, el 5 de marzo de 2024, Sonnell presentó su *Propuesta de Mantenimiento y Reparación de Flota FTA*[2]. Por su parte, JE Sales entregó *Propuesta Subasta SM2023-005*, fechada el 6 de marzo de 2024[3].

Posteriormente, el 20 de marzo de 2024, notificada el 27 de marzo de 2024 mediante correo certificado con acuse de recibo, la Junta de Subastas remitió a Sonnell una comunicación en la que informó lo siguiente:

> […]
>
> Celebrada la apertura de la subasta el día 05 de marzo de 2024, para Solicitud de ***Propuestas para Servicios de Mantenimiento y Reparación a la Flota Vehicular Adquirida con Fondos de la Administración Federal de Transporte (FTA, por sus siglas en Inglés) del Municipio de Patillas***; comparecieron los siguientes licitadores:
>
> - **JE SALES & SERVICES, INC**
> - **SONNELL FLEET SOLUTIONS II**
>
> Constituida la Junta de Subasta el 19 de marzo de 2024 para evaluar las propuestas presentadas por las compañías, le notificamos que luego de realizar un análisis exhaustivo de los documentos y propuestas recibidas, la Junta de Subasta por decisión unánime, determinó **Adjudicar** la Subasta de ***Solicitud de Propuestas para Servicios de Mantenimiento y Reparación a la Flota Vehicular Adquirida con Fondos de la Administración Federal de Transporte (FTA, por sus siglas en Inglés) del Municipio de Patillas***; a la compañía **JE SALES & SERVICES, INC.**[,]

---

[2] Apéndice del Recurso de Revisión Administrativa, págs. 29-196.
[3] Apéndice del Recurso de Revisión Administrativa, págs. 197-265.

ya que la propuesta presentada por la compañía representa los mejores intereses para el Municipio de Patillas.

El licitador que no estuviere de acuerdo con la determinación contenida en la presente comunicación tiene derecho a solicitar una reconsideración ante el Tribunal de Apelaciones del Estado Libre Asociado de Puerto Rico, en un período de diez (**10**) días a partir del depósito en el correo de la presente notificación (Art. 1.050 de este Código)[.]

[…][4] (Énfasis en el original)

En desacuerdo con la adjudicación, el 2 de abril de 2024, Sonnell compareció ante este foro revisor mediante el recurso de *Revisión Administrativa* KLRA202400170, en el que esbozó los siguientes señalamientos de error:

1. Erró la Junta de Subastas al no fundamentar adecuadamente y con razones que surgiesen de los pliegos de la subasta sus fundamentos para la adjudicación de la Subasta.

2. Erró la Junta de Subasta al no fundamentar las razones de interés público por las cuales fue adjudicada la subasta.

Simultáneamente, la parte recurrente presentó ante este foro revisor una *Urgente Moción en Auxilio de Jurisdicción*, la cual declaramos Ha Lugar, mediante *Resolución* emitida ese mismo día.

Luego, el 10 de abril de 2024, emitimos *Sentencia* en la que desestimamos el recurso de *Revisión Administrativa* KLRA202400170 por falta de jurisdicción, por notificación defectuosa. Específicamente, determinamos que "la Junta de Subastas no incluyó ni discutió la totalidad de los criterios que utilizó para adjudicar la subasta".

Así las cosas, el 23 de abril de 2024, la Junta de Subastas emitió y notificó, mediante correo certificado con acuse de recibo, una misiva en la que informó a las partes que la Subasta de Solicitud de *Propuestas para Servicios de Mantenimiento y Reparación a la Flota Vehicular Adquirida con Fondos de la Administración Federal de Transporte (FTA, por sus siglas en Inglés) del Municipio de Patillas* había sido adjudicada a JE Sales, debido a que "la propuesta

---

[4] Apéndice del Recurso de Revisión Administrativa, págs. 266-268.

presentada resulta la razonablemente más baja y la cual representa los mejores intereses presupuestarios del Municipio de Patillas"[5]. Además, incluyó los siguientes precios propuestos por los licitadores[6]:

**JE SALES & SERVICES, INC**

**I. Mantenimiento Preventivo**
- $654.00 por servicio mensual por unidad

**II. Mecánica Liviana**
- $105.00 por hora
- 15% en ganancia de Piezas
- $20.00 Inspecci[ó]n anual por vehículo
- $105.00 Instalación y reparación de aire acondicionado

**III. Mecánica Pesada**
- $100.00 por hora Mecánica Liviana
- 15% en ganancia de Piezas
- $20.00 Inspección anual por vehículo
- $105.00 Instalación y reparación de aire acondicionado

**SONNELL FLEET SOLUTIONS II**

**I. Mantenimiento Preventivo**
- $1,977.00 por servicio mensual por unidad

**II. Mecánica Liviana**
- $100.00 por hora
- 20% en ganancia de Piezas
- $175.00 Inspecci[ó]n anual por vehículo
- $100.00 Instalación y reparación de aire acondicionado

**III. Mecánica Pesada**
- $130.00 por hora Mecánica Liviana
- 20% en ganancia de Piezas
- $175.00 Inspección anual por vehículo
- $130.00 Instalación y reparación de aire acondicionado

Inconforme aún, el 2 de mayo de 2024, Sonnell compareció ante nos mediante el presente recurso de *Revisión Administrativa* en el que señaló a la Junta de Subastas la comisión de los siguientes errores:

1. Erró la Junta de Subastas al concluir que JE Sales & Services, Inc. cumplió con todos los requisitos; por lo que éste no es un licitador responsivo.

2. Erró la Junta de Subastas al no descalificar a JE Sales & Services, Inc. ya que no cumplió con todos los requisitos; y por ende no adjudicarle la subasta a Sonnell.

---

[5] Apéndice del Recurso de Revisión Administrativa, pág. 270.
[6] Apéndice del Recurso de Revisión Administrativa, págs. 270-271.

Sonnell acompañó su recurso con una *Urgente Moción en Auxilio de Jurisdicción*, en la que solicitó la paralización de los procedimientos relacionados a la ejecución de la subasta y/o cualquier orden de compra o gestión de contratación. En esta misma fecha, emitimos una *Resolución* en la que declaramos Ha Lugar la solicitud en auxilio de jurisdicción y ordenamos la paralización de los procedimientos. Además, concedimos a la parte recurrida un término de veinte (20) días para presentar su posición sobre los méritos del recurso.

Ante la incomparecencia de la parte recurrida, el 30 de mayo de 2024, emitimos una *Resolución* en la cual concedimos un término final e improrrogable hasta el 4 de junio de 2024, para presentar su alegato en oposición.

Así las cosas, en cumplimiento con lo ordenado, el 4 de junio de 2024, la Junta de Subastas presentó *Alegato en Oposición de la Parte Recurrida Municipio de Patillas, Junta de Subastas*. De forma sucinta, sostuvo que debido a la condición presupuestaria del Municipio de Patillas las decisiones de la Junta de Subastas "tienen que estar decididamente atadas a las ofertas que sean razonablemente más bajas, es decir, menos costosas para el Municipio"[7]. Asimismo, añadió que, en su evaluación, la Junta de Subastas "comprendió que la oferta de la parte recurrente estaba fuera de su alcance presupuestario"[8]. Por último, alegó que la parte recurrente no demostró en su recurso que la Junta de Subastas haya actuado de manera arbitraria o caprichosa al adjudicar la subasta a JE Sales.

El 14 de junio de 2024, este Foro Intermedio ordenó al Municipio de Patillas remitir copia certificada del expediente

---

[7] *Alegato en Oposición de la Parte Recurrida Municipio de Patillas, Junta de Subastas,* pág. 5.
[8] *Íd.,* pág. 6.

administrativo relacionado a la subasta número SM2023-005, aquí impugnada. El 21 de junio de 2024, el Municipio de Patillas cumplió con lo ordenado y sometió copia del expediente administrativo y su correspondiente certificación.

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

Nuestro Tribunal Supremo ha resuelto que "las agencias gubernamentales son las llamadas a adoptar las normas a seguir en sus propios procedimientos de adjudicación de subastas"[9]. Además, se ha reiterado que "las agencias gozan de una amplia discreción en la evaluación de las propuestas sometidas ante su consideración" pues estas poseen "una vasta experiencia y especialización que las colocan en mejor posición que el foro judicial para seleccionar el postor que más convenga al interés público"[10].

Del mismo modo, "las determinaciones de hecho de organismos y de agencias administrativas públicas tienen a su favor una presunción de regularidad y corrección que debe ser respetada, mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas"[11]. Consecuentemente, como el proceso de subastas está regulado por una ley especial general, le "corresponde a cada agencia ejercer el poder de reglamentación que le fuere delegado para establecer las normas que habrán de regir sus procedimientos de subasta"[12].

---

[9] *Caribbean Communications v. Pol. de P. R.,* 176 DPR 978, 993-994, (2009), *Perfect Cleaning v. Cardiovascular,* 162 DPR 745, 757 (2004), 3 LPRA secs. 9659 y 9671.
[10] *Íd.* en la pág. 1006, que cita a *Accumail P.R. v. Junta Sub. A.A.A.,* 170 DPR 821 (2007), *Perfect Cleaning v. Cardiovascular* [II], 172 DPR 139 (2007); *Empresas Toledo v. Junta de Subastas,* 168 DPR 771, 783 (2006), *AEE v. Maxon,* 163 DPR 434, 444 (2004).
[11] *Empresas Toledo v. Junta de Subastas, supra,* pág. 783.
[12] *Aut. Carreteras v. CD Builders, Inc.,* 177 DPR 398, 404 (2009).

En esencia, la deferencia y amplia discreción conferida a las agencias ha provocado que los foros apelativos nos abstengamos de intervenir o más aún, de sustituir el criterio de la agencia o junta concernida en la adjudicación de la buena pro a menos que se demuestre que la decisión se tomó de forma arbitraria, caprichosa, o que medió fraude o mala fe[13]. A su vez, los tribunales apelativos han de conceder una deferencia a las decisiones administrativas, debido a que éstas cuentan con vasta experiencia y los conocimientos especializados en los asuntos que le han sido encomendados[14]. Así pues, en específico, se ha utilizado jurisprudencialmente el criterio de razonabilidad para analizar si son sustentables las determinaciones administrativas. En ese sentido, nuestro más alto foro concluyó lo siguiente:

> Las agencias administrativas, de ordinario, se encuentran en mejor posición que los tribunales para evaluar las propuestas o licitaciones ante su consideración de acuerdo con los parámetros establecidos por la ley y los reglamentos aplicables. En este sentido, en el ejercicio de sus facultades se les reconoce discreción al momento de considerar las licitaciones, rechazar propuestas y adjudicar la subasta a favor de la licitación que estime se ajusta mejor a las necesidades particulares de la agencia y al interés público en general. Como consecuencia de ello, los tribunales no debemos intervenir con el rechazo de una propuesta o la adjudicación de una subasta, salvo que la determinación administrativa adolezca de un abuso de discreción, arbitrariedad o irracionabilidad[15].

Ahora bien, la subasta tradicional y la solicitud de propuestas (*request for proposal*) son los dos vehículos procesales que tanto el gobierno central como los municipios utilizan para la adquisición de bienes y servicios[16]. El propósito primordial de estos es proteger el erario, al fomentar la libre y diáfana competencia entre el mayor número de licitadores posibles[17]. Con ello, se pretende maximizar la posibilidad del Gobierno para obtener el mejor contrato, mientras se

---

[13] *Caribbean Communications v. Pol. de PR, supra*, pág. 1006.

[14] *Íd*; *Pacheco v. Estancias*, 160 DPR 409 (2003).

[15] *CD Builders v. Mun. Las Piedras*, 196 DPR 336, 348-349 (2016).

[16] *PR Eco Park, Inc. et al. v. Mun. de Yauco*, 202 DPR 525 (2019); *R & B Power v. E.L.A.*, 170 DPR 606 (2007).

[17] *Íd*; *Transporte Rodríguez v. Jta. Subastas*, 194 DPR 711, 716–717 (2016).

protegen los intereses y activos del pueblo contra el dispendio, el favoritismo, la corrupción y el descuido al otorgarse contratos[18].

Así pues, las **subastas y solicitud de propuestas gubernamentales** son invitaciones que hacen las agencias para que se sometan cotizaciones para la realización de obras o la adquisición de bienes y servicios[19]. Es norma conocida que, los procedimientos de subasta para la adquisición de bienes y servicios por las agencias del gobierno "están revestidos del más alto interés público y aspiran a promover la sana administración gubernamental"[20]. Este procedimiento está creado para "evita[r] el favoritismo, la corrupción, la extravagancia y el descuido al otorgarse contratos"[21].

De igual forma, **"[a]unque el gobierno debe procurar que las obras públicas se realicen al precio más bajo posible, existen otros criterios, además del precio, que tienen que ser evaluados"** para adjudicar una subasta[22]. (Énfasis nuestro). Algunos de los factores a considerar al adjudicar una subasta gubernamental incluyen lo siguiente: (1) que las propuestas sean conforme a las especificaciones de la agencia, (2) la habilidad del postor para realizar y cumplir con el contrato, (3) la responsabilidad económica del licitador, y (4) su reputación e integridad comercial, entre otros factores"[23]. Es decir, no existe una regla inflexible que exija adjudicar la subasta al postor más bajo[24]. A estos fines, ha quedado establecido que "como el interés público en este tipo de procedimiento es de gran peso a la hora de adjudicar, en ocasiones el mejor postor no siempre será el más bajo, sino el que, unido al

---

[18] *Íd.*

[19] *Perfect Cleaning v. Centro Cardiovascular*, 172 DPR 139, 143 (2007).

[20] *Maranello et al. v. O.A.T.*, 186 DPR 780, 789 (2012); *Caribbean Communications v. Pol. De P.R., supra*, pág. 994; *Costa Azul v. Comisión*, 170 DPR 847, 854 (2007).

[21] *Íd.*; *Aut. Carreteras v. CD Builders Inc., supra*; *Accumail P.R. v. Junta Sub. A.A.A., supra*, pág. 827; *Mar-Mol Co., Inc. v. Adm. Servicios Gens.,* 126 DPR 864, 871 (1990).

[22] *Maranello et al. v. O.A.T.*, *supra*; *C. Const. Corp. v. Mun. de Bayamón*, 115 DPR 559, 562-563 (1984).

[23] *Íd.*

[24] *Torres v. Junta de Subastas*, 169 DPR 886 (2007).

interés público de economía gubernamental, tenga una mayor capacidad de pericia y eficiencia"[25]. Por ello, en consonancia con lo antes expuesto, el Tribunal Supremo de Puerto Rico expresó lo siguiente:

> Un organismo gubernamental está facultado para rechazar la licitación más baja en todas aquellas ocasiones en que estime que los servicios técnicos, probabilidad de realizar la obra de forma satisfactoria y dentro del tiempo acordado, materiales, etc., que ofrezca un postor más alto, corresponde a sus mejores intereses. *Claro está, la agencia tiene discreción de rechazar la oferta más baja por una más alta, siempre y cuando esta determinación no esté viciada por fraude o sea claramente irrazonable*[26].

**-B-**

Las subastas municipales están reguladas por la Ley Núm. 107 de 14 de agosto de 2020, según enmendada, conocida como el *Código Municipal de Puerto Rico*[27] (Código Municipal). Además, con el fin de establecer las normas y guías administrativas para los procedimientos de subastas, se promulgó el Reglamento Núm. 8873 del 19 de diciembre de 2016 (Reglamento 8873).

En lo pertinente, el Artículo 2.040 del Código Municipal[28] enumera los criterios que debe considerar el municipio al adjudicar una subasta. En particular, la referida norma dispone lo siguiente:

> La Junta entenderá y adjudicará todas las subastas que se requieran por ley, ordenanza o reglamento y en los contratos de arrendamiento de cualquier propiedad mueble o inmueble y de servicios, tales como servicios de vigilancia, mantenimiento de equipo de refrigeración y otros.
>
> a. *Criterios de adjudicación* – Cuando se trate de compras, construcción o suministros de servicios, la Junta adjudicará a favor del postor razonable más bajo. En el caso de ventas o arrendamiento de bienes muebles e inmuebles adjudicará a favor del postor más alto. **La Junta hará las adjudicaciones tomando en consideración que las propuestas sean conforme a las especificaciones,** los términos de entrega, la habilidad del postor para realizar y cumplir con el contrato, la responsabilidad económica del licitador, su reputación e integridad comercial, la calidad del equipo, producto o servicio y **cualesquiera otras condiciones que se hayan incluido en el pliego de subasta**.
> La Junta podrá adjudicar a un postor que no sea necesariamente el más bajo o el más alto, según sea el caso,

---

[25] *Torres v. Junta de Subastas, supra.*
[26] *Empresas Toledo v. Junta de Subastas, supra*, pág. 783.
[27] 21 LPRA secc. 7001 *et. seq.*
[28] 21 LPRA sec. 7216 (a).

si con ello se beneficia el interés público. En este caso, la Junta deberá hacer constar por escrito las razones aludidas como beneficiosas al interés público que justifican tal adjudicación.

La adjudicación de una subasta será notificada a todos los licitadores certificando el envío de dicha adjudicación mediante correo certificado con acuse de recibo, o mediante correo electrónico, si así fue provisto por el licitador o licitadores. En la consideración de las ofertas de los licitadores, la Junta podrá hacer adjudicaciones por renglones cuando el interés público así se beneficie. **La Junta de Subasta notificará a los licitadores no agraciados las razones por las cuales no se le adjudicó la subasta.** Toda adjudicación tendrá que ser notificada a cada uno de los licitadores, apercibiéndolos del término jurisdiccional de diez (10) días para solicitar revisión judicial de la adjudicación ante el Tribunal de Apelaciones, de conformidad con el Artículo 1.050 de este Código[29]. (Énfasis nuestro).

Por su parte, el Reglamento 8873 establece las normas y las guías administrativas para los procedimientos de subastas. En particular, la Sección 11 de la Parte II del aludido reglamento, establece que la Junta adjudicará la subasta considerando los siguientes parámetros:

(1)  Subastas de Adquisición, Construcción y Suministros de Servicios No Profesionales

La adjudicación de las subastas, se harán a favor del licitador que esté respaldado por un buen historial de capacidad y cumplimiento y que reúna los siguientes requisitos:

a) **que cumpla con los requisitos y condiciones de los pliegos de especificaciones**;

b) que sea la más baja en precio o que aunque no sea la más baja en precio, la calidad y/o garantías ofrecidas superan las demás ofertas o se justifique el beneficio de interés público de esa adjudicación.

[…][30] (Subrayado en el original y negrillas nuestras)

Respecto al aviso de adjudicación de subastas, la Sección 13 de la Parte II del Reglamento 8873 preceptúa la obligación del Presidente de la Junta de emitir una notificación de adjudicación o determinación final por escrito y por correo certificado con acuse a todos los licitadores que participaron en la subasta. En cuanto al contenido del aviso de adjudicación o la determinación final de

---

[29] *Íd.*
[30] Reglamento Núm. 8873, págs. 110-111.

subastas, el inciso (3) de esa sección dispone que la notificación debe contener la información siguiente: (a) el nombre de los licitadores; (b) una síntesis de las propuestas sometidas; (c) los **factores o criterios que se tomaron en cuenta para adjudicar la subasta y las razones para no adjudicar a los licitadores perdidosos**; (d) el derecho a solicitar revisión judicial de la adjudicación o acuerdo final, ante el Tribunal de Apelaciones, y el término para ello, que es en el término jurisdiccional de diez (10) días contados desde el depósito en el correo de la notificación de adjudicación; (e) la fecha de archivo en autos de la copia de la notificación y la fecha a partir de la cual comenzará a transcurrir el término para impugnar la subasta ante el Tribunal de Apelaciones[31].

**-C-**

La Ley Federal de Transparencia y Responsabilidad Financiera[32] requiere que todas las entidades que realizan negocio con el Gobierno Federal, incluyendo, pero sin limitarlo a subvenciones y/o reembolsos de fondos federales[33] otorgados a un sub-recipiente, tienen que poseer el número identificador. En otras palabras, para participar en las contrataciones gubernamentales, se tiene que registrar en el Sistema de administración de adjudicaciones (SAM System for Award Management) del gobierno federal. El SAM es

---

[31] Reglamento Núm. 8873, págs. 118-119.
[32] 1 USCA section 6101.
[33] 2 CFR part 25, 200. Véase: **Subpart B - Policy § 25.200 Requirements for notice of funding opportunities, regulations, and application instructions.**

(a) Each Federal awarding agency that awards the types of Federal financial assistance defined in § 25.406 must include the requirements described in paragraph (b) of this section in each notice of funding opportunity, regulation, or other issuance containing instructions for applicants that is issued on or after August 13, 2020.

(b) The notice of funding opportunity, regulation, or other issuance must require each applicant that applies and does not have an exemption under § 25.110 to:

(1) **Be registered in the SAM prior to submitting an application or plan.**

una base de datos en la que las agencias del gobierno buscan contratistas[34].

**III.**

En su recurso, Sonnell aduce que incidió la Junta de Subastas al adjudicar la subasta a JE Sales debido a que dicho proponente no cumplió con todas las condiciones y especificaciones establecidas en el pliego de subasta. En particular, Sonnell alega que JE Sales incumplió con las siguientes condiciones y especificaciones del pliego de subasta:

[...]

15. En caso de desperfecto mecánico donde se afecte el itinerario de servicio, la compañía debe de proveer una unidad de reemplazo durante el t[é]rmino de tiempo que el vehículo municipal este fuera de servicio inmediatamente.

[...]

24. [Proveer] la información de la ubicación del taller y permisos de operación. Proveer fotos de todas las instalaciones.

25. Proveer copia de las licencias y certificaciones de todos los mecánicos del Colegio de Técnicos Automotrices de Puerto Rico, Licencia de Técnicos Automotrices del Departamento del Estado y Certificaciones de técnico diésel para todo el personal que realizar[á] reparaciones y/o mantenimiento preventivo a la flota.

[...]

27. Someter los estados financieros al 31 de diciembre de 2024.

28. Referencias bancarias, comerciales y de clientes.

[...]

30. Listado de técnicos automotrices y sus experiencias.[35]

Además, Sonnell señala que erró la Junta de Subastas al no descalificar a JE Sales y, en consecuencia, no adjudicarle la subasta a la parte recurrente. Por estar intrínsicamente relacionados, discutiremos los señalamientos de error de forma conjunta. Veamos.

Conforme surge del expediente ante nos, el 15 de febrero de 2024, la Junta de Subastas emitió un *Aviso Público*, mediante el cual

---

[34] Véase, https://sam.gov/content/home.
[35] Apéndice del Recurso de Revisión Administrativa, pág. 4.

solicitó propuestas selladas para la contratación de servicios de mantenimiento y reparación a la flota vehicular adquirida con fondos de la Administración Federal de Transporte (FTA, por sus siglas en inglés) del Municipio de Patillas[36]. El pliego de subasta incluyó cincuenta y seis (56) condiciones y especificaciones para la adjudicación de la buena pro[37].

El 5 de marzo de 2024, se celebró la apertura de subasta, a la que comparecieron como licitadores Sonnell y JE Sales. Luego, el 19 de marzo de 2024, la Junta de Subastas evaluó las propuestas presentadas por las compañías y adjudicó la subasta a JE Sales, ello, bajo el fundamento de que la propuesta presentada por la parte recurrida resultó ser "razonablemente más baja y la cual representa los mejores intereses presupuestarios del Municipio de Patillas"[38].

Tras examinar la *Propuesta de Mantenimiento y Reparación de Flota FTA* presentada por Sonnell, encontramos que, en cuanto al inciso 15 del pliego de subasta, Sonnell presentó en su propuesta que "como parte del plan de mantenimiento preventivo incluiremos 1 vehículo de 6-12 pasajeros para que sea utilizado como vehículo sustituto en caso de un desperfecto mecánico" [39]. Sostuvo que este vehículo estará disponible en todo momento para el Municipio, que la cabida será según la disponibilidad y el uso del vehículo será libre de costo.

Por su parte, JE Sales, en la propuesta, incluyó un servicio de "servicebody" para reparaciones de vehículos en ruta. Este servicio consta de una unidad provista de los siguientes instrumentos:

> JE Sales & Services proveerá servicio de llamadas de emergencias de reparaciones de vehículos en ruta (roadcalls), 24 horas al día, 365 días al año (24/7) **incluyendo servicio de grúa o arrastre para todas las unidades del Municipio** que requieran este servicio,

---

[36] Apéndice del Recurso de Revisión Administrativa, pág. 1.
[37] Apéndice del Recurso de Revisión Administrativa, págs. 3-5.
[38] Apéndice del Recurso de Revisión Administrativa, pág. 270.
[39] Apéndice del Recurso de Revisión Administrativa, pág. 45.

independientemente sea una reparación autorizada o cualquier otro tipo de incidente o accidente. [...][40].

Ahora bien, nótese, que el pliego indica que en caso de desperfecto mecánico la compañía debe proveer un reemplazo de unidad. Sonnell en su propuesta ofreció proveer un vehículo de 6-12 pasajeros en caso de desperfecto mecánico. En cambio, JE Sales incluyó proveer un servicio de grúa o arrastre en caso de reparaciones. A tenor con el pliego, JE Sales incumplió con el inciso número 15 de las condiciones y especificaciones requeridas en el pliego de subasta.

Referente al inciso 24 del pliego, Sonnell incluyó información de la ubicación y fotos de los distintos talleres en los que brinda servicios. También, esbozó la gama de servicios que brinda en cada uno de los talleres[41]. Además, presentó copia de los permisos de operación. Entre los documentos anejados en el expediente se encuentra el Certificado de Registro de Comerciante[42] y copia de una pegatina de la Oficina del Comisionado de Instituciones Financieras como Negocio Autorizado[43].

Por su parte, JE Sales proveyó fotos de las facilidades ubicadas en los municipios de Humacao y Toa Baja[44]. En cuestión de los permisos de operación, JE Sales presentó el Certificado de Registro de Comerciante[45]. De lo anterior se desprende que JE Sales incumplió con el inciso 24 del pliego por no constar en el expediente ante nos el permiso de operación como Negocio Autorizado en Puerto Rico.

Respecto al inciso 25 del pliego, Sonnell presentó un listado de tres (3) técnicos con copia de sus respectivas licencias otorgadas por el Colegio de Técnicos Automotrices de Puerto Rico, técnicos

---

[40] Apéndice del Recurso de Revisión Administrativa, pág. 214.
[41] Apéndice del Recurso de Revisión Administrativa, págs. 41-43.
[42] Apéndice del Recurso de Revisión Administrativa, pág. 89.
[43] Apéndice del Recurso de Revisión Administrativa, pág. 106.
[44] Apéndice del Recurso de Revisión Administrativa, págs. 219-220.
[45] Apéndice del Recurso de Revisión Administrativa, pág. 235.

automotrices autorizados por el Departamento de Estado y las respectivas certificaciones como Técnicos en Diésel[46].

De otro lado, JE Sales presentó copia de una licencia expedida por el Departamento de Estado a un Técnico Automotriz en Mecánica de Equipos Pesados y Camiones[47]. Sin embargo, no proveyó la licencia de dicho técnico, como certificado por el Colegio de Técnicos Automotrices de Puerto Rico, ni la certificación en Técnico Diésel. En virtud de lo anterior, JE Sales no cumplió con el inciso 25 del pliego de subasta.

En los incisos 27 y 28 del pliego, sobre estados financieros y referencias bancarias, Sonnell presentó su información financiera en un documento intitulado "Financial Statement", al igual que la información bancaria, comercial y de clientes, otorgados por Banco Popular de Puerto Rico[48]. Por otro lado, del expediente apelativo y la copia certificada del expediente administrativo, no se desprende que JE Sales haya presentado el estado financiero o la información bancaria pertinente y requerida en las condiciones y especificaciones del pliego[49]. Por tanto, JE Sales incumplió con los requisitos 27 y 28 del pliego de subasta.

En cuanto al inciso 30 del pliego, referente al listado de técnicos automotrices y sus experiencias, surge del expediente ante nuestra consideración que Sonnell documentó la experiencia de tres (3) técnicos. Para ello, acompañó una lista con los años de experiencia de cada técnico en el mantenimiento de flota vehicular[50]. Sin embargo, JE Sales no presentó el listado requerido de sus técnicos, ni documentó algún tipo de experiencia de éstos[51]. Por consiguiente, JE Sales incumplió con el inciso 30 de las condiciones

---

[46] Apéndice del Recurso de Revisión Administrativa, págs. 107-175.
[47] Apéndice del Recurso de Revisión Administrativa, pág. 239.
[48] Apéndice del Recurso de Revisión Administrativa, págs. 94-102.
[49] Apéndice del Recurso de Revisión Administrativa, págs. 197-247.
[50] Apéndice del Recurso de Revisión Administrativa, pág. 107.
[51] Apéndice del Recurso de Revisión Administrativa, págs. 197-247.

y especificaciones del pliego de subasta. En síntesis, JE Sales no cumplió con los requisitos 15, 24, 25, 27, 28 y 30 de condiciones y especificaciones del pliego de subasta.

Tras un examen minucioso del expediente, así como, de los requisitos mandatorios, surge con claridad que JE Sales, no cumplió con el requisito mandatorio, al no estar registrado en el *Unique entity identifier and System for Award Management (*SAM), lo cual también incide en la descualificación.

Enfatizamos que, aun cuando ninguna de las partes argumentó sobre el incumplimiento de haberse registrado en la base de datos SAM, este error debe ser consignado por este Foro al ser un requisito mandatorio en este tipo de subasta cuyo fondo proviene de la Administración Federal de Transporte.

Es forzoso concluir que, aun cuando JE Sales ofreció un precio más bajo que Sonnell en la propuesta de subasta, no cumplió con todas las condiciones y especificaciones del pliego. En consecuencia, no cumplir con dichas condiciones y especificaciones tiene el efecto de invalidar *ab initio* la propuesta del licitador, según lo establece el Reglamento 8873 y el ordenamiento jurídico.

Como reseñáramos, tras un estudio detenido de los documentos presentados por la parte recurrente, constatamos que JE Sales incumplió con parte de la documentación requerida en las condiciones y especificaciones del pliego de subasta. Aun así, el Municipio de Patillas, en aras de proteger sus mejores intereses presupuestarios, señaló en su *Alegato en Oposición de la Parte Recurrida Municipio de Patillas, Junta de Subastas* que "los documentos a los que se refiere la parte recurrente, ya los tenía en su poder"[52]. No obstante, al revisar el expediente administrativo certificado no consta dicha documentación. Lo cual, trastoca la

---

[52] *Alegato en Oposición de la Parte Recurrida Municipio de Patillas, Junta de Subastas,* pág. 6.

trasparencia que debe permear en todos los procesos de adjudicación de subastas en Puerto Rico[53].

En virtud de lo anterior, colegimos que erró la Junta de Subastas al adjudicar la buena pro a JE Sales, sin este licitador cumplir con todas las condiciones y especificaciones del pliego de subasta.

## IV.

Por los fundamentos antes expuestos, **revocamos** la adjudicación de la subasta impugnada. En consecuencia, ordenamos la continuación de los procedimientos y devolvemos el caso a la Junta de Subastas del Municipio de Patillas para la celebración de una nueva subasta.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[53] *CD Builders, Inc. v. Mun. Las Piedras, supra*, 351.